The final case scheduled for oral argument this morning is Michael Frazier v. City of Gadsden, AL and Ms. Hyde is here for the appellant, Mr. Adair for the appellee, and Ms. Hyde when you're ready, you may begin. Good morning. May it please the court, my name is Robbie Hyde and I, along with Mr. Ed Howard to my right, represent the appellant, City of Gadsden. This case, tried to a jury, involves a claim of race discrimination by Michael Frazier, a white male, who submitted an application to the Civil Service Board of the City of Gadsden for an entry-level police officer position. Frazier contends that police chief Crane, also a white male, removed his name from a list of candidates, the hiring roster, due to a racial animus. All of this was presented to the jury, right? Yes, sir. So you want us to reverse what the jury decided? Yes, sir, with one exception. There was one, there's one issue in the brief, and actually it's my first issue to talk about with you today, and it's the analysis under Rule 19 of necessary and indispensable parties. The city is not the employer. Correct. It's not the employer at all. It is not the employer, and in addition to that, there was a necessary party that was not joined in this case, the Civil Service Board, which is created by statute. The members of that board are appointed by the government. And you didn't waive that? I'm sorry, sir. You didn't waive that? No, sir. The Rule 19 is an issue that can be raised at any time. It is about, and there's a case that I cited for that particular proposition, Kimball v. Florida Bar, 539 Fed 2nd 1305, which is a Fifth Circuit case, but prior to 1981. So you can wait all the way till now, I'm sorry. Go ahead. Yes, sir. You can wait all the way till now, have motions for summary judgment, judgment as a matter of law, turn the city, I mean, I can just imagine what was going on in that police department, and then wait until you get here. Could you raise it at oral argument even, or you would have to raise it at a brief? I think in a brief. We draw the line at the brief. Yes, sir. The Kimball case specifically talks about this issue coming up for the first time on appeal. So it should go back and then we just replace the board and we have another jury trial? No, sir. Our argument is that because the Civil Service Board is an indispensable party and the bail cannot be enrung, the case should be dismissed in its entirety. Alternatively, back for a new trial, but our position is the case should be dismissed. Okay. I can only assume so. I did not participate in the trial. Can I ask you one question about Rule 19 before we go to the merits? So I get it that you can raise this pretty much any time you want. Are you in a position to explain to us why this wasn't raised before? Because, you know, even if it is jurisdictional and you're within your rights to raise it now, it still does kind of stink. And so to use a technical term of art, I'm just trying to figure out if you can tell us without breaching any confidences why it wasn't raised before. I cannot. Okay. I cannot. But even if the Civil Service Board is... I don't understand why it would be a necessary party if it was the city who decided not to advance Mr. Fraser's application for employment. That's just it. It wasn't the city. The Civil Service Board, by statute, by Alabama statute, governs the hiring of the police chief. It hires the police chief. It directly oversees the police chief. The police chief reports directly to the Civil Service Board and it disciplines the police chief. The Civil Service Board is the hiring authority? That's correct. Even though Mr. Crane doesn't... Does Mr. Crane work for the Civil Service Board or does he work for the city? In this situation, we're talking about control and oversight. And the Civil Service Board has both the control and the direct oversight of the chief of police and all members of the police force. So under federal law, the issue is control. And in that respect, it's the Civil Service Board that was at issue here and not the city. So if the Civil Service Board was a party, as a necessary party, who would... And the jury found for Mr. Fraser, who would pay the judgment? It would be the city. However, this is analogous to a situation such as we find with a sheriff in the state of Alabama. The sheriffs in the state of Alabama are not county officials because they are, even though their jurisdiction is the county, and their budget and their employees are paid by the county, they are state officials. They are part of the executive branch of the state government. Therefore, they are separate entities. And because they have the control over their employees, even though they don't pay them, the sheriffs are the employer. The same situation here. The Civil Service Board is created by the state of Alabama by statute. And it is overseen by the state of Alabama through the appointment of its members by the governor. So is the board a party in every discrimination case involving the city of Gadsden? It should be. It should be. Has it historically been? That I can't answer. I do know this, though, that there are multitudes of decisions in Alabama courts with regard to the Civil Service Board and it being the defendant when employees are contending, police officers are contending that they run fairly disciplined. And is the board, I was about to say you, but is the board indispensable even after the plaintiff here has sworn off his request for instatement? I think I sort of understand that the board would be necessary for the logistics of getting him instated to the force. But still, still, why is that? Yes, sir. Because there are two distinct issues under whether or not a party is necessary. One is whether full relief can be afforded. And we would contend it couldn't have been. We're looking at this from the inception of the lawsuit. There is nothing that the city of Gadsden could have done with regard to instatement, for instance, because that is wholly the Civil Service Board's purview. In addition to that, you look to what has happened with regard to the non-joined party and whether or not its rights or its position has been challenged without its presence in the case. And that is absolutely the situation here. So under either prong of the section or the Rule 19 analysis, it's a necessary party. Then you get to indispensability here and the four factors, what prejudice was suffered by the non-joined party. Can it be lessened depending on the relief fashioned? Is the judgment adequate without joinder? And whether the plaintiff has any alternative, had any alternative remedies. Those point to the fact that the Civil Service Board was indispensable. The Frazier's allegations necessarily challenge the Civil Service Board's rulemaking and their authority and control over both Crane, the chief who had the alleged animus, and any members of the police force. Second, there is no way to unring this bell. Getting back to the point that I responded to with Judge Moreno, the bell has been rung. It cannot be unrung. So we would contend that dismissal is appropriate given that situation. Can you just sort of flesh that out for me? I'm not sure I understand the bell ringing analogy that you're making. So why is it exactly that the bell couldn't be unrung and just do again with the board in? If we send it back, you're saying send it back for trial with the board. Because ultimately there's going to be an issue with Mr. Frazier contending that the Civil Service Board essentially joining them in the lawsuit. He didn't file an EEOC charge against them. His time is run to do so. Secondly. So you get to wait to sort of retroactively insert the board into the case, but he is bound by his own decision not to sue the board in the first place. That's our contention. Yes, sir. In addition to that, 11th Amendment immunity would bar any damages. Of course, he could still get declaratory relief. So there's one part of relief that he could potentially get. We contend that the Civil Service. Hold on. I'm sorry. I'm so, so, so, so, so sorry. Sure. But you're saying the board essentially is a necessary and indispensable party in every case in which the city of Gadsden is sued in a discrimination case. But the board has 11th Amendment immunity in every single case alleging discrimination. It depends on how it's alleged. But for the purposes of Section 1981, I'm contending that there's 11th Amendment immunity, not for Title VII. I'm splitting those out in discussion of two different. Okay. Got it. Okay. Now I'll move on to the merits of the case. There was no direct evidence of discrimination. And I'm going to go through these very hurriedly, so please bear with me. Crane, during his interview, according to Mr. Frazier, stated that he would, he promised to hire minorities over whites. However, the transcript of that interview was actually in the record. He did not say that. He, in fact, stated that he would work on minority recruitment. In order to get to direct evidence, you'd have to basically infer that to recruit means to hire, refuse to hire white people. But to Judge Moreno's point, was that argument made in contending presentations to the jury? Well, this was in the Rule 50. Of the meaning of this piece of evidence? I'm sorry? Was this argument, you know, I presume the parties debated this piece of evidence during trial. Yes, sir. The jury heard the same argument that you just made? Yes. Got it. Yes. This is an issue of Rule 50, which was raised. Yep. Got it. Yes. Next, Mr. Frazier points to Captain May being asked to process the applications of three African-American candidates. This requires that the term process is synonymous with hire. In addition to that, these three African-Americans, Sandridge, Swain, and Anderson, of those three, only one was recommended for hire. Therefore, hire and process cannot be synonymous. See, my concern with all of this, and I don't know if you're going to have all the time, how long was the trial? I think it was two days. Okay. You don't have two days. Judge Wilson is very kind, but I don't think he's going to be that kind. So you can't go through that. All of this was presented to the jury. Cite me the case where a jury's decision was reversed. Not Rule 50, because usually the Rule 50s and the summary judgments are in favor of the employer, and then they go up. But cite me after everything went to the jury, and they found out about all the disputes, the prior filing by the captain against the chief, everything that happened in that police department, where a court of appeals said, you know what? It wasn't enough. If I'm not mistaken, Minichievi-Brown so held. That was a case where a jury verdict was overturned. And what were the facts of that case? Your Honor, I don't recall off the top of my head. It was cited in the materials. But there's clearly evidence in this case that Mr. Crane wanted to increase the number of African-Americans on the police force. In fact, he directed, I think it was Ms. Regina May, to put a checkmark by the names of the black applicants so that they can be given preference in the jury and title. I mean, there's more to it. So, we have to look at the evidence in a light most favorable to Mr. Fraser. Tell me why that's not enough to sustain this verdict. Sure. First of all, that was what I was just speaking of with regard to process versus hire. So, it's our position that that is not direct evidence. Then you go to, okay, was there sufficient circumstantial evidence? When you compare, as Mr. Fraser tried to do, these same three African-Americans. Well, excuse me, not the same three. It was Mostella, Sandridge, and Montgomery. He didn't have any valid comparators. He had, there were multiple issues with his application. Multiple issues with his application that disqualified him under Mr. Crane's view from being a police officer. So, can I just ask you about that briefly?  I know you're over time, and I'm sorry. So, I will confess that when I read your brief, I too thought, wow, there are multiple issues that might disqualify this individual. However, when I read your opponent's brief and found that there were explanations for many of them, none of which were included in your brief, he seems not to be quite the monster that you had painted him to be. And so, I guess, sort of, where are we left at the end of the, with the explanations? You know, he took some change off of family members' bedside tables, but never out of a wallet. He had a camera, but when he realized it was stolen, he returned it. Took a soft drink, I think, and then he sort of didn't know if it was really against the rules, but he felt icky inside about it. None of that, I don't know, stole a road sign. I'm not going to say who hasn't stolen a road sign, but stole a road sign when he was 17. It just didn't seem all that terrible once I read the other side of the story, which I presume the jury heard. Well, he was explaining that in front of a jury. You have to remember that Chief Crane was analyzing his application, which is a very different setting. But he saw the explanations, presumably, right? I don't think all those explanations were on there. Okay. Well, that's an interesting question that we can ask your opponent. Okay. Yes, sir. Does any, are there any more questions? I know I'm past my time. You preserved some time for rebuttal. Yes, sir. Thank you. We'll hear from Mr. Adair. May it please the Court, it's an honor for me to be here today. And as a graduate of Berry High School, it's an honor to argue before a Homewood High School graduate as well. He's done his homework. Okay. Judges, this is a case of blatant race discrimination. It is an odd case because the chief of police is white and he was discriminating against white applicants. But the testimony the jury heard was a week long. It wasn't two days. And I don't fault my co-counselor or opposing counsel for not knowing that. She didn't try the case with me. Ed Howard did and he did a fantastic job. But the jury heard Captain Regina May testify that less than two weeks into Chief Crane's tenure, he came into her office and said, bring me an eligibility roster. What are we going to do about the Civil Service Board? Now it's a big deal, isn't it? Judge, I don't think it's a big deal because I think it's gotcha. And I don't think Title VII was meant to be a gotcha statute. This point was never raised in response to the EEOC charge, in the defendant's answer, in defendant's interrogatory answers, in their summary judgment motion, which was denied, in the pretrial order, or at the pretrial hearing with Judge Hopkins. As a matter of fact— But we have to find that the city of Gadsden was the employer, right? Yes, sir. How do we find that under Title VII? What's the evidence here that shows that the city, no matter how many boards have decisions and committees, they're always interviewing committees, how do we find it's the employer who's liable under Title VII? How do we find that that is the employer? Judge, the enabling statute that set up the Civil Service Board is Alabama Code 4528A-4201. And it states that, that shall continue in their respective employments of the cities during good behavior, efficiency, and obedience. The statute itself contemplates the employees will be employed by the city, and that the Civil Service Board is not the employer. And I think you raised the point that it never got to the Civil Service Board in this case. Chief Crane disqualified my client and 19 other white applicants from a roster so that he could cherry pick the three African Americans he wanted to process. So can relief be provided by the city? Certainly. And so where do we go to reach that conclusion? Well, Judge, I would just like to point out that this argument that the city is now making for the first time on appeal, they made it before Judge Hopkins in a case not long after the Fraser case was tried, and they lost there. And that was the Henson v. City of Gadsden case. Case action 4-14-CV-163 where Judge Hopkins found that where two or more state or local government entities will be treated as a single employer under Title VII. And she cited the Lies case, the Lies v. City of Riviera Beach. So the city lost that argument before Judge Hopkins shortly after my trial and didn't appeal that judgment. So I don't think that... So if we take a look at that case, we can reach the conclusion that relief can be provided by the city? Judge, I think by taking a look at that case, by looking at the enabling statute of the Civil Service Board, and honestly by Title VII itself, which contemplates the employer is the only entity held liable. But when we look at that statute, doesn't it say that the Civil Service Board and not the city has legal authority over the police chief? So that board would be the only party that incurs liability for the chief's behavior? Judge, Title VII didn't... I understand what your point is and I understand it's a novel argument that the city is making at this point late in the game. But I believe that Title VII is meant to prohibit illegal employment practices and not a Civil Service Board that oversees the chief but has no role with respect to Mr. Frazier.  He would have been paid by the city. He would have reported to the chief of police who is employed by the city. And when we look at the Alabama Code, we can reach that conclusion that he was employed by the city and he was released by... and he was not hired by the city? Judge, I believe the root of the issue is Title VII rather than the enabling statute. But I believe the enabling statute does not undermine Title VII's rule against employment discrimination practices. So I think Title VII is the foundation to find that. I don't think the Civil Service Board's creation or their oversight of the chief of police in this case because there's no way that my client could have even been before the Civil Service Board. Chief Crane took him out of the equation before the Civil Service Board even heard his name and didn't give him that shot. This can't be the first Title VII case. The Civil Service Board is something that applies to all cities in the state of Alabama or just for this city? Judge, I confess I only looked within the city of Gadsden's administrative code. So I don't know that answer. As an Alabamian, I can represent that there are some statutes that apply... lots of statutes that apply only to specific localities. So it's entirely possible that Gadsden has its own Civil Service Board statute. Other cities may have theirs as well. But so let me ask you a question while you're pausing. So as to fashioning relief, I think I heard earlier that Gadsden would pay any judgment, correct? The city of Gadsden would pay a judgment. That is what opposing counsel represented. So as to relief, there's no question whether monetary relief... a monetary relief award could be fashioned. Correct. Got it. Okay. Judge, you're right. In post-trial motions, we did withdraw a request for reinstatement based on a number of factors and where my client was in his life at that point. So we did ask for front pay. The city has raised some issues to whether or not egregious circumstances are required in order to award front pay. And I would assert that under the Tucker v. Housing Authority case from Judge Proctor in Birmingham, the Title VII has never required egregious circumstances to award front pay. But I think the point I keep coming back to, and I've lived this case for about four or five years now, is Chief Crane injected race into this decision-making process when he walked into Captain May's office and said, Bring me a roster. And then gave it back and said, Bring me a roster with the race beside each applicant. He took it away from her office and came back a short time later and had only checkmarked three African-American applicants. He was operating under what he thought was a mandate from the Civil Service Board to increase the diversity of the police department. It's a noble goal. It's a good goal. The police department needs to represent the community. But it doesn't need to throw out the Civil Service Board's rules or Title VII's requirements in order to reach that goal. After my client was disqualified, the Chief – well, let me back up. After Captain May objected to his instruction, Chief Crane went about his mission because he removed Captain May from the process altogether, transferred her to another division, and began retaliating against her. The evidence the jury heard about that was fairly strong. The next February, six or seven months later, the Chief took another roster that my client didn't appear on, the Overstreet roster, and skipped over three white applicants in order to process three African – or hire three African-Americans in a row that were out of order. He's supposed to go one, two, three, four, five. And I believe in that one, he went two, three, and five on the Overstreet roster. And one of those on the Overstreet roster was Mr. Sandridge, who was below my client on the previous roster. So – I haven't looked at a transcript of the trial, but does the city have an affirmative action plan? Judge, the fire department is under a consent decree. And I would think that – I would argue that is also evidence that Chief Crane has some incentive to stay away from a consent decree as to the police department. But I'm not aware of any affirmative action plan. It was not before the jury. But there is a consent decree with the fire department, but not with the police department. So it was not within his – Crane's purview if he saw that African-Americans were underrepresented on the force to make efforts to increase their representation? Certainly. And I didn't have any problem with him saying during his interview process, I'm going to make an effort to increase the minority representation on our force. The way he went about it, though, discriminated against white applicants. So the first four he hired were white, weren't they? Judge, the very first one he hired was a white female, Tara Bates. She was number one on my client's roster. After that, he brought in an African-American lateral hire named Montgomery. And then there was a passing reference in the transcript to the fact that he hired four white males after that, after Montgomery. They were never identified. There was never applications put in the record. There was never any evidence to demonstrate who they were. There was a list that was created as a sort of a summary. But in front of that list, it was clear that those were all lateral transfers. They were not rookie applicants like my client. It was on that list of 19. The chief went into my client's roster, reviewed 19 applications, or actually the testimony of 24. There's 19 on the roster. For some reason, he reviewed 24 application packages. And he disqualified 20 out of 24 according to his chief deputy, Michael Gargis. And Gargis testified at trial as well. Judge, this is my book. Go right ahead. Yes. So can you help me just with the record question I had about whether your client's explanations for his past misdeeds were on the application? I thought they were. I was going to that point, Judge. Thank you. He did include a significant amount of narrative information on his application. Captain May testified and Michael Gargis testified, or maybe it was Chief Crane later testified that they sometimes call applicants to flesh out those answers a little bit more. Can you explain this to me? Why did you put yes on this? My client was so concerned about a polygraph exam that he was going to take further in the process that he just listed everything on his application. Stealing from a relative when he was a child, taking drinks from a CVS where he worked, moving a street sign, and things of that nature. And he explained every one of them. What the jury found, I think, in my opinion, persuasive was the Chief came in with three very specific reasons he disqualified my client from this list of 24. But he couldn't testify to any of the others. And we argued, and I think successfully, that the Chief Crane came up with these post hoc in relation to the EEOC charge and in relation to the claims against him. We never claimed that Chief Crane was racist or that this was racism, but it was absolutely disparate treatment and he was motivated solely by race. Judge, one other thing that I believe bears mentioning is there's the subjectivity and arbitrariness of the Chief's disqualification process. He spent a great deal of time on the stand on day four and early on day five talking about his process of why he disqualified my client. But he testified he never put them in writing. He never reduced anything to writing about any of the applicants he disqualified and he didn't have a set way of doing it, but he liked it that way because, and honestly, he admitted this on the stand to my surprise, that he liked it that way because it gave him more flexibility, more discretion. His Chief Deputy at the time, Michael Gargis, who had retired by the time trial came around, got up on the stand and testified, well, his disqualifying criteria weren't really what he, there were some disparities between the disqualifying criteria. And so Gargis and Crane weren't even lined up in why my client was disqualified and why others might have been disqualified. And even more significantly towards the next hiring process, when the three African-Americans were selected over the white applicants, Chief Crane could not identify any reason he didn't pick the white applicants. And there was evidence that he skipped straight down in the way he wanted. I lost my train of thought there, judges. I apologize. One other argument that I think was important to the jury was that the EEOC position statement was inconsistent with their argument in trial. The city argued that the lateral hiring process for Mr. Montgomery was different and more abbreviated than hiring rookie applicants. And there was never any discussion within the EEOC position statement by the city about my client being disqualified or the fact that he had never been told he was disqualified until he came and asked questions about it. What was the composition of the jury you were going to tell me when I asked your opponent that? I could tell. Thank you, guys. The jury, if I'm, and Mr. Howard can correct me if I'm wrong, I believe it was ten white jurors and two African-American jurors. The trial did last five days, Your Honor, and we put on our evidence of six witnesses. The city cross-examined those witnesses or directed those witnesses and then didn't call any additional witnesses at the end of their case. I keep going back to a case that I couldn't get away from, I believe, in my brief or in my research is the Lockheed Martin case. It defies logic for us to argue now that the jury was supposed to believe Chief Crane when he said, even though I put race on that roster, I didn't consider race when I disqualified those white applicants. It defies logic and I think the Lockheed Martin decision should be followed in this case in allowing the jury verdict to stand. We have to understand that the jury deliberated, Judge Hopkins had already turned down summary judgment to the city and the jury found in favor of my client with a relatively modest verdict in light of the evidence. How do you advance an affirmative action plan if you're a hiring authority without factoring race? How would the Chief go about doing? Chief Crane do that. Judge, that's an excellent question. I believe he could have gone to the Civil Service Board and found some way to amend the rules he was supposed to operate under. Jerry Gladden, the Personnel Director, said he never trained the Chief on what the Civil Service Board rules were. They said that an applicant stays on that roster for two years and then when you get there, the person that's ranked highest because of the written and the oral test scores is picked first. The Chief could have said, well, let's do that, but let's do it more on a two-to-one ratio to see if we can increase the number of African Americans and we'll advance two African Americans for every white applicant. There are ways they could have done that in an open forum within the Civil Service Board and put that before the city, but the way the Chief went about it was covert and he silenced anyone that objected. Captain May objected and told him he couldn't do it. He got rid of her. He moved her to a different department. And then she sued him. That is correct, Judge. There was an EEOC charge that she had filed before around the time of the claim and there was a separate claim based on an email that was discovered during the trial that was thrown out shortly thereafter, but she did file a claim. And the jury heard that. The city spent a great deal of time talking about how biased she was or how she might not like this Chief, but she was very convincing in her testimony that she said when she didn't get picked for the Chief job, she walked up to the Chief and said, I hope you're the best Chief the city's ever had. Thank you, Judge. All right. And Ms. Hyde, you've reserved some time for rebuttal. Yes, sir. I'd like to make a few quick points in my time allotted. First of all, if for no other reason the Rule 50 motion should have been granted because there's simply an invalid legal theory here. The legal theory of Mr. Frazier, the plaintiff, was I was discriminated against because I'm not a minority. Because we can, I guess, contend that the very first person hired under Chief Crane's tenure was white and he tries to take issue with her because she was also female. This is not a gender case. This was a race case. There was no basis for a claim about her being female. She was white. She's the comparator here. She was hired first. In addition, with regard to Marcella Sandridge in Montgomery. She was first on that list anyway, wasn't she? She was very first on the very first roster. Yes. She was the very first person recommended by Chief Crane to the Civil Service Board for hiring. And again, her name is Tara Bates. In addition to that, there's a lot of hate attempted to be made by the EEOC response that the city filed. However, the EEOC response was simply a response to allegations by Mr. Frazier that were false. Number one, that he was the first on the roster, which again was not true. Tara Bates was. And secondly, that he'd been skipped over for an African American male, Mr. Montgomery. Well, the issue with Mr. Montgomery was that he was a lateral hire. He was already a post-certified. He was hired in a completely different roster and different process than was Mr. Frazier. There's also been issues about jumping over. And suffice it to say, when it's all said and done, the first person hired under Chief Crane's tenure was white. Whites were hired at a three to one ratio over African Americans during Chief Crane's tenure. And his tenure and his hiring and recommendations to the Civil Service Board did not change the racial makeup of the police force in Gadsden. Presumably some version of that was your or your colleague's closing argument to the jury. Right? I'm sorry. Some version of the argument that you just made surely must have been the closing argument to the jury. Something like it. I'm sure it was. I haven't read the closing argument recently, but I'm sure it was. I haven't read it at all, but I just have to assume that some version of it. I would have to assume so, but I'm not sure. Yeah. In addition to that, there are, there were these comparators that have been pointed to, and especially the mentioning of the three African American males that were supposedly processed. However, and I would like to reiterate to the court, that only one of those was recommended for hire. Only one of those three was recommended for hire. And none of the comparators named had the quality or quantity of issues in their backgrounds, as did Mr. Frazier. And we can talk about subjective hiring criteria. This is objective information from Mr. Frazier's own hands. Is this Montgomery? Is that one of them? Yes, sir. Mr. Montgomery is one of them. Mr. Mostel and Mr. Sandridge are the others. Montgomery had debt collection issues, had been refused credit, had overdrafts, admitted to using marijuana in the preceding 10 years, et cetera. Although that was presented to the jury, I assume. Yes, sir. The important thing about those issues with Mr. Montgomery, those were on a 2010 application that Mr. Crane had not reviewed. They were not before Mr. Crane. He was not even employed as the chief of police at the time of the first application by Mr. Montgomery, and there's no evidence that he knew about it. Those were issues that were, I guess, discovered through discovery. And Mr. Mostel and Mr. Sandridge had not the quantity or the quality of background issues as did Mr. Frazier. And obviously, as we know from this court's precedent, that the quality and quantity of issues must be nearly identical for these to be valid comparators. There was simply not enough circumstantial evidence to sustain the jury's verdict here. Let me ask you just one last question, if I could, Judge Wilson. When the police officers get their checks, is it the city of Gadsden? That was never in the record. I honestly don't know. Because that usually would determine whether someone's an employer or not, don't you think? Well, not always, sir. Not usually, I said. Maybe so, yes, sir. But again, I would point to the analogy with the sheriff in the state of Alabama. His employees are paid by the county and the checks say county commission of employees for the purposes of Title VII or whatever other employment action there could be. So while you may look at that issue, it is not determinative. Control is, however, determinative. I think we have your argument. Thank you, counsel. Court is in recess until 9 o'clock tomorrow morning. All right.